**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND**

| | | |
|---|---|---|
| **CASA DE MARYLAND, INC,** | : | |
| **Plaintiff,** | : | |
| **v.** | : | **Civil No.: PJM 08-3249** |
| **U.S. DEPARTMENT OF HOMELAND SECURITY**, *et. al.*, | : | |
| **Defendants.** | : | |

...oOo...

## MEMORANDUM OF LAW IN SUPPORT OF PARTIAL MOTION TO DISMISS OR FOR SUMMARY JUDGMENT[1]

### I. INTRODUCTION

This is an action brought by plaintiff, CASA de Maryland, pursuant to the Freedom of Information Act (FOIA). This action seeks disclosure of information from the Internal Revenue Service (IRS) and the Department of Homeland Security (DHS). The complaint specifically requests information from some of the component organizations within DHS.

This Court should award judgment in favor of Defendants on this partial motion as the material which was not disclosed to Plaintiff was properly withheld pursuant to legitimate FOIA statutory exemptions. Specifically, as outlined in more detail in the declaration of Ryan Law, the material being challenged is exempted from disclosure under several different exemptions. First,

---

[1]By agreement, and as briefed to the court, the parties jointly agree to handle resolution of this case through motion for partial summary judgment. See Docket No. 18. The parties further agree that further disclosure will proceed, and no party will object to a subsequent motion for summary judgment on the remainder of the case.

Mr. Law's declaration demonstrates that information was partially withheld pursuant to 5 U.S.C. § 552(b)(5), which is the FOIA provision that shields from disclosure information under the attorney-client communications privilege. Additionally, the Law declaration demonstrates how certain redactions and withholdings were made on the grounds of 5 U.S.C. §§ 552(b)(6) and (b)(7) which permit the withholding of information where disclosure would constitute an unwarranted invasion into personal privacy. Accordingly, because all the withholdings were proper under FOIA, summary judgment should be entered in favor of defendants.

## II. STATEMENT OF FACTS

Plaintiff's complaint and related FOIA requests focus on two separate factual scenarios. The first involves law enforcement activity by ICE agents at a 7-Eleven convenience store in Baltimore Maryland on January 23, 2007 (hereinafter "7-11 Operation"). See Complaint at ¶ 12. The second involves law enforcement activity by ICE agents, along with IRS and local police in Annapolis on June 30, 2008 (herinafter "Annapolis Operation"). See Complaint at ¶ 60. Plaintiff submitted FOIA Claims related to the "7-11 Operation" to Immigration and Customs Enforcement (ICE), Center for Rights and Civil Liberties (CRCL) and the Office of Inspector General (OIG). This motion deals exclusively with the FOIA request submitted to ICE relevant to the "7-11 Operation," and the plaintiff has agreed to drop the requests for information from CRCL and OIG in the complaint.

Subsequent to the "7-11 Operation," the ICE Office of Professional Responsibility (OPR) conducted an inquiry into allegations of civil rights violations by ICE law enforcement personnel at the operation. See Law Declaration at p. 6, fn.2. This investigation led to a report consisting numerous affidavits, exhibits, and and an investigative summary. See Law Declaration

2

Attachment 13 (consisting of the investigative summary and affidavits), attached hereto as exhibit 1. The report was prepared in conjunction with the DHS, Office of Civil Rights and Civil Liberties, which is the DHS office overseeing internal reviews of acts that allegedly violate civil rights or civil liberties. <u>See</u> Law Declaration at P. 6, fn.2.

By letter dated September 22, 2008, Plaintiff submitted a FOIA request seeking information relating to the 7-11 Operation. <u>See</u> Law Declaration ¶ 5, and Attachment 1. Plaintiff's letter also sought a fee waiver and expedited processing of the request. <u>Id</u>. By letter dated September 23, 2008, ICE indicated that it was holding Plaintiff's request for a fee waiver in abeyance pending the review of responsive documents. <u>See id.</u>, at Attachment 2. That letter also denied Plaintiff's request for expedited processing and provided Plaintiff with instructions for appealing that determination. <u>Id</u>.

By letter dated October 13, 2008, Plaintiff submitted an appeal of ICE's denial of the request for expedited processing of the September 22, 2008, request to the DHS, Associate General Counsel (General Law). <u>See</u> Law Declaration at ¶ 5 and Attachment 3.

By letter dated November 21, 2008, the ICE FOIA Office responded to Plaintiff's September 22, 2008, request and indicated, among other things, that ICE had located 211 pages of records responsive to the request. <u>See</u> Law Affidavit at ¶ 6 and Attachment 4. Of those pages, ICE indicated that 63 pages of records were being fully withheld pursuant to FOIA exemptions (b)(5), (b)(6), and (b)(7)(C) and portions of 109 pages were being withheld pursuant to FOIA exemptions (b)(2)(low), (b)(6), and (b)(7)(C). <u>Id.</u>

By letter dated February 2, 2009, the ICE FOIA Office issued a supplement to ICE's November 21, 2008, response to Plaintiff's FOIA request and indicated, among other things, that ICE had located 29 pages of records responsive to the request.  See Law Declaration at ¶ 7 and Attachment 5.   Of those pages, ICE indicated that portions of the 29 pages were being withheld pursuant to FOIA exemptions (b)(2)(low), (b)(5), (b)(6), and (b)(7)(C).  See id.

By letter dated February 25, 2009, the ICE FOIA Office issued a second supplement to ICE's November 21, 2008, response to Plaintiff's FOIA request and indicated, among other things, that ICE had completed review of an additional 37 pages.  See Law Declaration at ¶ 8 and Attachment 6.  ICE indicated that portions of those pages were being withheld pursuant to FOIA exemptions (b)(2)(low), (b)(2)(high), (b)(6), (b)(7)(C), and (b)(7)(E).  See id.

By letter dated March 13, 2009, the ICE FOIA Office issued a third supplement to ICE's November 21, 2008, response to Plaintiff's FOIA request and indicated, among other things,  that ICE had completed review of an additional 292 pages.  See Law Declaration at ¶ 9 and Attachment 7.  ICE indicated that portions of those pages were being withheld pursuant to FOIA exemptions (b)(2)(low), (b)(2)(high), (b)(6), (b)(7)(C), and (b)(7)(E).  See id.

By letter dated April 2, 2009, the ICE FOIA Office issued a fourth supplement to ICE's November 21, 2008, response to Plaintiff's FOIA request and indicated, among other things, that ICE had completed review of an additional 304 pages and 16 videos.  See Law Declaration at ¶ 10 at Attachment 8.  Of those pages, ICE indicated that 204 were being released in their entirety

and portions of 100 pages were being withheld pursuant to FOIA exemptions (b)(5), (b)(6), and (b)(7)(C).  Id.  ICE also indicated that the videos were being released in their entirety.  See id.

By letter dated April 15, 2009, the ICE FOIA Office issued a fifth supplement to ICE's November 21, 2008, response to Plaintiff's FOIA request and indicated, among other things, that ICE had completed review of an additional 244 pages.  See Law Declaration at ¶ 11 and Attachment 9.  Of those pages, ICE indicated that 126 were being released in their entirety and portions of 118 pages were being withheld pursuant to FOIA exemptions (b)(2)(high), (b)(5), (b)(6), and (b)(7)(C).  See id.

By letter dated May 6, 2009, the ICE FOIA Office issued a sixth supplement to ICE's November 21, 2008, response to Plaintiff's FOIA request and indicated, among other things, that ICE had completed review of an additional 103 pages and one video.  See Law Declaration at ¶ 12 and Attachment 10.  Of those pages, ICE indicated that 55 were being released in their entirety and portions of 23 pages were being withheld pursuant to FOIA exemption (b)(6).  Id. ICE also indicated that the videos were being released in their entirety.  See id.

By letter dated June 22, 2009, the ICE FOIA Office issued a seventh supplement to ICE's November 21, 2008, response to Plaintiff's FOIA request and indicated, among other things, that ICE had completed review of an additional 97 pages.  See Law Declaration at ¶ 13 and Attachment 11.  ICE indicated that portions of those pages were being withheld pursuant to FOIA exemptions (b)(5), (b)(6), and (b)(7)(C).  See id.

By letter dated July 2, 2009, the ICE FOIA Office issues an eighth supplement to ICE's November 21, 2008, response to Plaintiff's FOIA request and indicated, among other things, that ICE had completed review of an additional 385 pages.  See Law Declaration at ¶ 14 and Attachment 12.  ICE indicated that portions of those pages were being withheld pursuant to FOIA exemptions (b)(2)(high), (b)(6), and (b)(7)(C).  See id.

To date, ICE has released 385 pages of records in their entirety, 1058 pages of records in part, and 17 videos in their entirety, which are responsive to Plaintiff's September 22, 2008, FOIA request.  See Law Declaration at ¶ 15.

On previous occasions, the parties resolved the FOIA requests made to CRCL and OIG and agreed those requests could be dropped from the case.  On June 24, 2009, the parties submitted to the court a proposal to resolve the issues related to the "7-11 Operation" by motion, leaving the remainder of the complaint, relating to the "Annapolis Operation" for resolution at a later date.  The court approved this plan.  See Docket No. 18.  In accordance with this arrangement, the parties have agreed on the disputed issues which require resolution by the court.

### III.  DISPUTED ISSUES REQUIRING RESOLUTION BY COURT

The following is a list of documents which are enclosed as attachments to Law Declaration, as well as the specific applicable exemptions claimed by the defendants:

1.  Department of Homeland Security Administrative Inquiry Report and affidavits. This document consists of a total of 126 pages, specifically challenging defendant's exemption of names under Exemption B(6) and B(7)(c).  See Law Declaration at Attachment 13.

6

2.  Department of Homeland Security Administrative Inquiry Report, page 13 of 29, challenging the redaction of in the first paragraph, second line, after the word "Baltimore" up to the letters "DO" in the fifth line pursuant to (b)(5), (b)(6), (b)(7)(c).  <u>See</u> Law Declaration at Attachment 13, bates no. ICE.000013.

3.  Administrative Inquiry Affidavit, page 7 of 9, challenging the redactions starting on line 11 though line 16, and on line 17 through line 19, pursuant to (b)(5), (b)(6), (b)(7)(c).  <u>See</u> Law Declaration at Attachment 13, bates no. ICE.000069.

4.  Administrative Inquiry Affidavit, challenging the redaction beginning on line 42 of page 4 through line 2 of page 5, pursuant to (b)(5).  <u>See</u> Law Declaration at Attachment 13, bates no. ICE.000120-121.

## IV.  APPLICABLE LEGAL STANDARDS

### A.  Motion To Dismiss For Failure To State A Claim

A motion to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure tests the sufficiency of the plaintiff's complaint.  <u>See</u> <u>Edwards v. City of Goldsboro</u>, 178 F.3d 231, 243 (4th Cir.1999).  In order to properly plead a claim, plaintiff must male "a 'showing,' rather than a blanket assertion, of entitlement to relief."  <u>Bell Atl. Corp. v. Twombly</u>, 127 S. Ct. 1955, 1965 n.3 (2007).  That is, "[f]actual allegations must be enough to raise a right to relief above the speculative level . . . on the assumption that all the allegations in the complaint are true (even if doubtful in fact)."  <u>Id.</u> at 1965 (internal citations omitted).  Where a plaintiff fails to provide appropriate "factual content" to support his claims, those claims should be dismissed for failure to state a claim.  <u>Ashcroft v. Iqbal</u>, 556 U.S. ___, 129 S. Ct. 1937, 1949-51 (2009).

In considering a motion to dismiss, the court need not accept unsupported legal allegations, Revene v. Charles County Comm'rs, 882 F.2d 870, 873 (4th Cir. 1989), legal conclusions couched as factual allegations, Papasan v. Allain, 478 U.S. 265, 286 (1986), or conclusory factual allegations devoid of any reference to actual events, United Black Firefighters v. Hirst, 604 F.2d 844, 847 (4th Cir. 1979). A court may dismiss a complaint "as a matter of law if it lacks a cognizable legal theory or if it alleges insufficient facts under a cognizable legal theory." Turner v. Kight, 192 F. Supp. 2d 391, 398 (D. Md. 2002) (internal citations omitted). A court should also dismiss a complaint if it appears beyond doubt that the plaintiff can prove no set of facts in support of his claims that would entitle him to relief. Franks v. Ross, 313 F.3d 184, 192 (4th Cir. 2002).

## B. Motion for Summary Judgment

Under Federal Rule of Civil Procedure 56, a court must enter summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine dispute as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). Summary judgment is also appropriate when a party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex Corp. v. Catrett, 477 U.S. 317, 322, 106 S. Ct. 2548, 2552 (1986). "A party opposing a properly supported motion for summary judgment bears the burden of establishing the existence of a genuine issue of material fact." Bello v. Bank of Am. Corp., 320

F. Supp. 2d 341, 344 (D. Md. 2004). When considering a motion for summary judgment, the Court must view the evidence in the light most favorable to the non-moving party. See Khoury v. Meserve, 268 F. Supp. 2d 600, 607 (D. Md. 2003). Nevertheless, "'[i]f the evidence is merely colorable, or is not significantly probative, summary judgment may be granted.'" Sensormatic Sec. Corp. v. Sensormatic Elecs. Corp., 455 F. Supp. 2d 399, 410 (D. Md. 2006) (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249-50, 106 S. Ct. 2505, 2511 (1986)). "Unsupported speculation is insufficient to defeat a motion for summary judgment." Axel v. Apfel, 171 F. Supp. 2d 522, 525 (D. Md. 2000). "Additionally, the existence of only a 'scintilla of evidence' is not enough to defeat a motion for summary judgment." Id. A district court has an "affirmative obligation . . . to prevent 'factually unsupported claims and defenses' from proceeding to trial.'" Felty v. Graves-Humphreys Co., 818 F.2d 1126, 1128 (4th Cir. 1987) (quoting Celotex Corp., 477 U.S. at 323, 106 S. Ct. at 2553).

FOIA cases are generally resolved on summary judgment. Wickwire Gavin, P.C. v. United States Postal Service, 356 F. 3d 588, 591 (4th Cir. 2004).

## V. ARGUMENT

### A. Claims against CRCL and OIG should be Dismissed

Plaintiff has agreed to drop the separate claims against CRCL and OIG in this complaint. See Complaint ¶¶ 40-69. Accordingly, these requests, and associated paragraphs, should be dismissed from the complaint.

**B.  FOIA Generally**

While the Freedom of Information Act generally favors the disclosure of documents,

Congress expressly recognized in enacting FOIA that "public disclosure is not always in the

public interest."  Baldridge v. Shapiro, 455 U.S. 345, 352 (1982).  Indeed, in certain instances,

"'legitimate governmental and private interests could be harmed by release of certain types of

information.'"  Bowers v. United States Dep't of Justice, 930 F.2d 350, 353-54 (4th Cir. 1991)

(citation omitted).  Accordingly, Congress created a number of exemptions which prevent the

disclosure of certain information.  See 5 U.S.C. § 552(b).

If a FOIA request has been denied by a governmental agency pursuant to one of these

exemptions, the requesting party may file suit in Federal Court against the "agency" whose

component was responsible for the non-disclosure.  5 U.S.C. § 552(a)(4)(B).[2]  In such a suit, the

Court reviews the matter de novo, with the burden on the agency to satisfy the grounds for non-

disclosure.  Id.; United States Dep't of Justice v. Reporters Comm. For Freedom of the Press,

489 U.S. 749, 755 (1989).

Typically, courts grant summary judgment in a FOIA case based on the information

provided in affidavits or declarations when the affidavits or declarations describe "the material

withheld with reasonable specificity" and demonstrate that withheld material falls into one of the

---

[2] An "agency" is defined for purposes of FOIA as "any executive department, military
department, Government corporation, Government controlled corporation, or other establishment
in the executive branch of the Government (including the Executive Office of the President), or
any independent regulatory agency."  5 U.S.C. § 552(f)(1).

exemptions.  Hanson v. United States Agency for Int'l Dev., 372 F. 3d 286, 290 (4th Cir. 2004);

see also Young v. CIA, 972 F.2d 536, 538 (4th Cir. 1992) (noting that while FOIA permits a

Court to order in camera review of the withheld information, typically the Court may rely on the

affidavits and declarations submitted by the government).  "The court is entitled to accept the

credibility of such affidavits, so long as it has no reason to question the good faith of the agency."

Heily v. United States Dep't of Commerce, 69 Fed. Appx. 171, 173 (4th Cir. 2003); see also

Carney v. United States Dep't of Justice, 19 F.3d 807, 812 (2d Cir. 1994) (noting how affidavits

submitted by government officials in FOIA cases are "'accorded a presumption of good faith'")

(citation omitted).

Here, Plaintiff's claims under FOIA fail to state a claim that it is entitled to the

information withheld by the defendants, and defendants can demonstrate that summary judgment

should be granted in favor of Defendants on Plaintiff's FOIA claims because all responsive

information withheld falls under an applicable exemption.

C.      **Specific FOIA Exemptions**

**1. Exemption (b)(6)**

FOIA permits an agency to decline to disclose information where disclosure would cause

an "unwarranted invasion of personal privacy."  5 U.S.C. § 552(b)(6).  For purposes of FOIA, the

withheld information must first fall within the category of "personnel and medical and similar

files" to be protected under Exemption (b)(6).  The United States Supreme Court has interpreted

the term "similar files" broadly and has stated that all information which "applies to a particular

individual" meets the threshold requirement for Exemption 6 protection.  <u>United States Dep't of State v. Washington Post</u>, 456 U.S. 595, 602 (1982).  Once that threshold requirement is met, then whether disclosure is warranted is "determined by balancing the asserted privacy interests against the 'only relevant public interest . . . the extent to which disclosure of the information would shed light on an agency's performance of its statutory duties.'"  <u>Judicial Watch, Inc. v. United States</u>, 84 Fed. Appx. 335, 338-39 (4th Cir. 2004) (quoting <u>United States Dep't of Defense v. Fed. Labor Relations Auth.</u>, 510 U.S. 487, 495-96 (1994)).

### 2. Exemption (b)(7)(c)

When a criminal law enforcement agency invokes Exemption 7, it must establish that the records were compiled for law enforcement purposes.  To meet the requirements of the exception, the records must "arise during the course of an investigation, and they must involve the detection or punishment of violations of law."  <u>Allnutt v. U.S. Dept of Justice</u>, 99 F. Supp 2d 673, 680 (D. Md. 2000).  Once the agency has demonstrated that the records were compiled for law enforcement purposes, the Court must next consider whether the release of information withheld "could reasonably be expected to constitute an unwarranted invasion of personal privacy."  5 U.S.C. §552 (b)(7)(C).  This determination necessitates a balancing of the individual's right to privacy against the public's right of access to information in government files.  <u>See</u>, <u>e.g.</u>, <u>U.S. Dept. of Justice v. Reporters Committee for Freedom of the Press</u>, 489 U.S. 749, 776-780 (1989).  A similar balancing test is applied regarding Exemption 6.  <u>See</u> <u>generally</u> <u>U.S. Dept. of Defense, et. al, v. Federal Labor Relations Auth.</u>, 510 U.S. 487 (1994).  However,

the U.S. Supreme Court has also found that Exemption 7(C) is more protective of privacy than Exemption 6.  See id. at 496, FN 6.

The Supreme Court has made clear that "whether disclosure of a private document under Exemption 7(C) is warranted must turn on the nature of the requested document and its relationship to 'the basic purpose of the Freedom of Information Act to open agency action to the light of public scrutiny,' [Dept of Air Force v. Rose, 425 U.S. 352, 372 (1976)], rather than on the particular purpose for which the document is being requested."  Reporter's Committee, 489 U.S. at 772 (internal quotation marks omitted).  Information that does not directly reveal the operations or activities of the government "falls outside the ambit of the public interest that the FOIA was enacted to serve."  Id. at 775.  That public interest is to "shed [] light on an agency's performance of its statutory duties."  Id. at 772.

### 3. Exemption b(5) Attorney Client Communication

The attorney-client privilege is one of the privileges covering information exempted pursuant to FOIA exemption b(5).  See Rein v. Unites States Patent and Trademark Office, 553 F.3d 353, 375-6 (4th Cir. 2009).  The attorney-client privilege is the "oldest of the privileges for confidential information known to the common law."  Upjohn Co. v. United States, 448 U.S. 383, 389 (1981).  The supreme court has long recognized that the attorney client privilege merits special protection "to encourage full and frank communication between attorneys and their clients and thereby promot broader public interests in the observance of law and administration of justice."  Hanson v. United States Agency for Int'l Development, 372 F.3d 286, 291 (4th Cir.

2004)(quoting Upjohn, 449 U.S. at 389). The privilege protects "not only the giving of professional advice to those who can act on it but also the giving of information to the lawyer to enable him to give sound and informed advice." Hanson, 372 F.3d at 291 (quoting Upjohn, 449 U.S. at 390).

The attorney-client privilege applies to facts divulged by a client to his attorney, and to opinions given by an attorney to his client based on those facts. See Hanson v. U.S. Agency for International Development, 372 F.3d 286, 291 (4th Cir. 2004); Schlefer v. United States, 702 F.2d 233, 245 (D.C.Cir. 1983). The attorney-client privilege covers attorney-client communications when the specifics of the communication are confidential, even though the underlying subject matter is known to third parties. See Upjohn Co. v. United States, 449 U.S. 383, 395-96 (1981). The application of the privilege can include an agency as a client and the agency lawyers as attorneys. See Rein, 553 F. 3d at 376 (internal citations omitted).

**D.     Because All The Information Withheld Was Exempted From Disclosure, Summary Judgment Should Be Granted In Favor Of Defendants.**

As detailed more fully in the declaration by Mr. Law, for all the responsive material that was withheld, there was a proper exemption from disclosure under FOIA. Each of the particular grounds for non-disclosure will be discussed in turn.

**1.   Defendants Properly Withheld Names of DHS Personnel from Under The Exemptions For Protecting Personal Privacy Found In 5 U.S.C. §§ 552(b)(6) and (b)(7).**

Numerous cases have concluded that the names of government employees or witnesses participating in government-led investigations were properly withheld under (b)(6) or (b)(7). See, e.g., Judicial Watch, Inc., 84 Fed. Appx. at 339 (holding that it was proper for agency to withhold the names of lower-level IRS employees under (b)(6) that appeared on documents that were responsive to FOIA request for all documents related to Judicial Watch); NLRB v. Robbins Tire & Rubber Co., 437 U.S. 214, 242-43 (1978) (holding that witness statements in unfair labor complaint investigation were exempt from disclosure under (b)(7)). The Fourth Circuit has particularly indicated that such individuals have "well-recognized and substantial privacy interests . . . . in the nondisclosure of their identities and their connection with particular investigations because of the potential for future harassment, annoyance, or embarrassment." Neely v. FBI, 208 F.3d 461, 464-65 (4th Cir. 2000); Nix v. United States, 572 F.2d 998, 1006 (4th Cir. 1978) (holding non-disclosure of the names of FBI agents was proper because "[p]ublic identification of any of these individuals could conceivably subject them to harassment and annoyance in the conduct of their official duties and in their private lives").

Significantly, it is the "interest of the general public and not that of the private litigant" that matters. Brown v. FBI, 658 F.2d 71, 75 (2d Cir. 1981). "[T]he only public interest relevant for purposes of Exemption 7(C) is one that focuses on 'the citizens' right to be informed about what their government is up to.'" Davis v. Department of Justice, 968 F.2d 1276, 1282 (D.C. Cir. 1992) (quoting Reporters Committee, 489 U.S. at 773) (internal quotation marks omitted); see also Judicial Watch, 2002 WL 31962775 at *6 (D. Md, Dec. 12, 2002).

In his complaint, plaintiff asserts that the requested information is necessary to compel the release of records relating to enforcement activities "that have resulted in allegations of grave violation of the Fourth and Fifth Amendments to the United State Constitution." <u>See</u> Complaint at ¶ 2.  Presumably, the request for the agents' names is to identify Agents who engaged in the alleged constitutional violations.  None of the requests submitted to the agency have identified the particular public interest in the names of the agents themselves.  However, the plaintiff did indicate that it intended to release the information requested to the media.  <u>See</u> Law Declaration at ¶¶ 20, 22.  While plaintiff has received the substance of the report, and the discussion of the government operations, there is no evidence that the individual names of agents will shed any greater light on the government operations themselves.

In contrast with the minimal public interest in the individual names of agents, as well as the lack of identification of any public interest in the names of the agents, the court must consider that "[i]ndividuals such as subjects, witnesses, informants, and government employees have a substantial interest in nondisclosure of their identities and connection with particular investigations." <u>Baltimore Sun v. U.S. Marshals Service</u>, 131 F. Supp. 2d 725, 728 (D. Md. 2001).  The privacy interests of third parties mentioned in law enforcement files are "substantial," while "[t]he public interest in disclosure [of third-party identities] is not just less substantial, it is insubstantial."  <u>SafeCard Services, Inc v. SEC</u>, 926 F.2d 1197, 1205 (D.C. Cir. 1991).  In fact, "unless access to names and addresses of private individuals appearing in files within the ambit of Exemption 7(C) is necessary in order to confirm or refute compelling

evidence that the agency is engaged in illegal activity, such information is exempt from disclosure." <u>SafeCard Services</u>, 926 F.2d at 1206.

The names of law enforcement officers who work on criminal investigations have traditionally been protected against release by Exemption (b)(7)(C). <u>Baltimore Sun</u>, 131 F. Supp. 2d at 728; <u>see also</u> <u>Lesar v. U.S. Dept. of Justice</u>, 636 F.2d 473, 487-488 (D.C. Cir. 1980)

Plaintiff is requesting the names of the law enforcement and agency personnel be provided pursuant to FOIA. As detailed by Mr. Law, the material withheld under Exemption (b)(6) include the "identities of ICE Law enforcement officers (Special Agents, Immigration Enforcement Agents, Deportation Officer, etc.) and other ICE and DHS personnel" referenced in the OPR report. <u>See</u> Law Declaration at ¶¶ 20, 22. The OPR report was prepared by an Agency Fact Finder as in inquiry into specific allegations of misconduct. <u>See id.</u> at p. 6, fn. 2.

The information withheld is properly categorized as the sort of "similar files" accorded protection by exemption (6). <u>United States Dep't of State v. Washington Post</u>, 456 U.S. 595, 602 (1982). Furthermore, the report and investigation was an inquiry into the conduct of law enforcement activities and possible civil rights violations. By contrast, this was not an example of general oversight of employees, but an inquiry into specific allegations of misconduct. <u>See</u> <u>Jefferson v. Department of Justice</u> 284 F.3d 172, 176-177 (D.C. Cir. 2000); <u>See also</u>, <u>Sakamoto</u> <u>v. EPA</u>, 443 F. Supp. 2d 1182, 1194 (N.D. Cal. 2006) (distinguishing monitoring of employees from investigating possible violations of the law). As the investigation is a review of actual enforcement activities, there is a clear nexus between the investigation and the agency's law

enforcement duties.  This report is, therefore, compiled for law enforcement purposes under

exemption (7)(c).  See Western Journalism Center v. Office of the Independent Counsel, 926

F.Supp. 189, 191 (D.D.C.1996) (cited in Baltimore Sun v. U.S. Marshals Service, 131 F.Supp.2d

725, 728 fn.3 (D.Md. 2001) (noting that requested records "must be related to the enforcement of

federal law and there must be a rational connection between the investigative activities and the

agency's law enforcement duties.")

Moreover, Mr. Law's declaration indicates that the "privacy interests of the individuals

are substantial and have been weighted against the public interest in disclosure.  I have

determined the former outweighs the latter because of the disclosure of the ICE and DHS

personnel names and other identifying information would not shed light on how ICE carries out

its statutory duties."  See Law Declaration at ¶¶ 20, 22.  Under either exemption (6) or (7)(c), this

information would identify them personally, opening them as individuals to attention, contact, or

harassment at times that would not relate to the performance of official duties.  See id.  Plaintiff

cannot identify any public interest in the individual names above and beyond the information

concerning the operations it has already received.  Accordingly, it is clear that the individuals

whose names have been redacted from various portions OPR investigation and affidavits have

substantial privacy interests, and there is no countervailing public interest in the information

withheld.  Thus, the information is exempt from disclosure under 5 U.S.C. § 552(b)(6) and (7).

See Bond v. United States Attorney, 2007 WL 6652424 at *5 (D. Md. 2007).[3]

---

[3]To the extent plaintiff may argue it needs the names of the individuals to pursue litigation
against the agents, such arguments are without merit..  See e.g., Bivens v. Six Unknown Named

**2. ICE Properly Withheld Information in Under Exemption 5 as Attorney-Client Communications[4]**

FOIA Exemption 5 typically functions to exempt information normally privileged from discovery in civil litigation. See Allnutt v. Dep't of Justice, 2000 WL 34475731 at * 8 (D.Md. 2000). This includes the attorney-client privilege. See Rein, 553 F.3d at 376. In order for documents or information contained in documents to be covered under the attorney-client privilege, there must be an "express or implied grant of confidentiality based on the circumstances" and that the communication "involved the exchange of facts and legal opinion." Id.

In this case, the redacted material sought by the plaintiff relates to communication between an ICE Agent, as a representative of ICE, and a lawyer from the ICE Office of General Counsel (OGC), an Agency attorney. See Law Declaration at ¶ 18. That communication was between agency employees seeking legal guidance associated with the arrest of individuals in the

---

Agents of the Federal Bureau of Narcotics, 403 U.S. 388 (1971) (Claims of Constitutional violations proceeding without agents name). Furthermore, plaintiff cannot rely on FOIA to circumvent discovery rules in other proceedings. See Ebersole v. U.S., 2007 WL 2908725 at * 7 (D. Md. 2007) (finding that FOIA is not a mechanism to replace discovery in other proceedings). Plaintiff's need for the information to assist in individual cases and litigation is irrelevant to determining a public interest. See Neely, 208 F.3d at 464 (finding no public interest for purposes of FOIA in the fairness of a criminal defendant's trial); see also EPA v. Mink, 410 U.S. 73, 86 (1973) (declaring FOIA "largely indifferent to the intensity of a particular requester's need"); see also Cucci v. Drug Enforcement Administration, 871 F. Supp. 508, 514 (D.D.C. 1994) (a requestor cannot overcome the agency's proper invocation of a recognized FOIA exemption on the ground that the withheld information constitutes exculpatory evidence in a criminal proceeding).

[4]Within the contested text are redactions of names pursuant to exemptions 6 and 7. The application of these exemptions is addressed supra, in part V.D.1.

7-11 Operation.  See id.  The agents involved were employees of ICE and were authorized and expected to discuss cases with agency lawyers.   See id.  The communications in question each specifically references legal opinion, analysis and advice provided by the attorney to the employee/client.  For instance, the redacted portions of the executive summary specifically reference what the agent was "advised" by the lawyer.  See Law Declaration at Attachment 13, bates no. ICE.000013.  A redaction contained in one of the affidavits describes conduct by the attorney to include "advised," provided "reasons," "guided," and "proposed."  See id. at Attachment 13, bates no. ICE.000069.  The second affidavit in question specifically references requests by the counsel for information from the agent.  See id. at Attachment 13, bates no. ICE.000120-121.

The circumstances demonstrate that the agent was exchanging information with the lawyer, and the lawyer was providing legal advice.  The exchange between agent and attorney was similar to regular circumstances where the agent shares information with the attorney, and both parties expect the information and discussion remain confidential within the Agency. See Law Declaration at ¶ 18.

In sum, because there is an applicable exemption for all of the information withheld, summary judgment should be entered in favor of defendants on plaintiff's FOIA claim.

## VI. CONCLUSION

Based on the foregoing, defendants respectfully request that this Court dismiss plaintiff's claims with prejudice, or alternatively, grant summary judgment in favor of defendants.

Respectfully submitted,

Rod J. Rosenstein
United States Attorney

By: _____/s/_____
Thomas H. Barnard
Assistant United States Attorney
Bar No. 27488
36 South Charles Street
Fourth Floor
Baltimore, Maryland 21201
(410) 209-4800