**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**

| | | |
|---|---|---|
| **CASA DE MARYLAND, INC,** | : | |
| **Plaintiff,** | : | |
| **v.** | : | **Civil No.: PJM 08-3249** |
| **U.S. DEPARTMENT OF HOMELAND SECURITY,** *et. al.*, | : | |
| **Defendants.** | : | |

...oOo...

**REPLY BRIEF IN SUPPORT OF**
**PARTIAL MOTION TO DISMISS OR FOR SUMMARY JUDGMENT**

The United States of America, on behalf of the defendants, respectfully submits this Reply

Brief in support of its Partial Motion to Dismiss or for Summary Judgment (Doc. 27), and states as

follows:

1.      Plaintiff Casa de Maryland brought this action pursuant to the Freedom of

Information Act ("FOIA") seeking disclosure of information from the Internal Revenue Service

("IRS") and the Department of Homeland Security ("DHS") relating to immigration enforcement

activities that allegedly involved "violations of the Fourth and Fifth Amendments to the United

States Constitution."  (Doc. 1 at ¶ 2).

2.      The United States has produced hundreds of pages of requested documents to Casa

de Maryland in recent months.  See Doc. 27, Exhibit 1, Law Declaration, at ¶ 15.  One of the

documents, referred to as the DHS "Administrative Inquiry Report," was produced with various

redactions.  See Doc. 27, Exhibit 1, Attachment 13. The Administrative Inquiry Report is an internal

DHS document that reported on an investigation of alleged civil rights violations in connection with

the immigration enforcement activities at issue, and concluded that such allegations were "unsubstantiated." (Id. at 1).  The parties to this action agreed that a small number of disputed issues with respect to those redactions remain; whether the agency (1) properly redacted the names of DHS personnel pursuant to 5 U.S.C. §§ 552(b)(6) and (b)(7), and (2) properly redacted attorney-client communications from three separate sections of the document (bates nos. ICE 13, 69, 120-121) pursuant to 5 U.S.C. § 552(b)(5).

3.      The United States filed a Partial Motion to Dismiss or for Summary Judgment on October 5, 2009.  (Doc. 27).  The motion first argues that Casa de Maryland's claims against the DHS Office of Inspector General and the Center for Rights and Civil Liberties should be dismissed by agreement of the parties.  (Doc. 27 at 9).  The motion next argues that the redaction of the names of DHS personnel from the "Administrative Inquiry Report" was proper under 5 U.S.C. §§ 552(b)(6) and (b)(7) because disclosure of the names would not serve a public interest, and because the privacy interests of the individuals far outweigh any public interest that may even purportedly be served. (Doc. 27 at 14-18).  The motion finally argues that the agency properly redacted material from the "Administrative Inquiry Report" that was protected from disclosure by 5 U.S.C. § 552(b)(5) because the redacted materials document privileged communications between DHS employees and DHS attorneys involving legal guidance, opinions, analysis, and advice.  (Doc. 27 at 19-20).

4.      Plaintiff Casa de Maryland filed a Brief in Opposition to the motion on November 3, 2009 (Doc. 34).  Casa de Maryland agrees that the claims against the DHS Office of Inspector General and Office of Civil Rights and Civil Liberties should be dismissed.  (Doc. 34 at 2, n.1). However, Casa de Maryland argues that the redactions of the DHS employees' names was improper

because the names were not exempt from disclosure under 5 U.S.C. §§ 552(b)(6) and (b)(7).  On this point, Casa de Maryland contends that "there is extensive record evidence of government impropriety" and presents purportedly conflicting statements by DHS employees, arguing that such statements establish a sufficient public interest to justify the disclosure of the employees' names. (Doc. 34 at 6-9).  Casa de Maryland also argues that the agency improperly redacted three separate sections of material under 5 U.S.C. § 552(b)(5) because, as the plaintiff puts it, it is either "impossible to tell whether the communciations were made for the purpose of seeking or obtaining legal advice," or because the redacted material fits with the "crime-fraud exception" to the attorney-client privilege.  (Doc. 34 at 11-13).

5.      Casa de Maryland is wrong to suggest that the names of the DHS employees in the Administrative Inquiry Report should be disclosed.  As set forth in the United States' motion, the identity of the DHS employees is exempt from disclosure under 5 U.S.C. §§ 552(b)(6) and (b)(7) because the privacy interests of the individuals far outweigh the "public interest in disclosure." Lesar v. U.S. Dep't of Justice, 636 F.2d 472, 486 (D.C. Cir. 1980).  Disclosure of the names would lead to the identification of the DHS employees who participated in the immigration enforcement activity.  (Doc. 27, Exhibit 1, Law Declaration at 8-10).  Such disclosure could subject these individuals to unwanted contact by media and others, and expose them to unreasonable annoyance, harassment, or threats of reprisal.  (Id.).  Similarly, the individuals' family members and private lives could be affected by public knowledge of their identities and potential actions by members of the public against them.  (Id.).  The threat of such adverse actions is heightened because Casa de

Maryland specifically intends to "make any information that it receives as a result of this FOIA request available to the public, including the press . . .". (Id.; Doc. 27, Exhibit 1, Attachment 1).

Conversely, knowing the specific names of the DHS employees will not in any way serve the threshold purpose of the b(6) and b(7) exemptions; to "shed light on an agency's performance of its statutory duties." Judicial Watch, Inc. v. United States, 84 Fed.Appx. 335, 338-39 (4th Cir. 2004), quoting United States Dep't of Defense v. Fed. Labor Relations Authority, 510 U.S. 487, 495-96 (1994). While Casa de Maryland seeks the names of the employees to serve the personal litigation goals of the individuals affected by the immigration enforcement activity, it is the "interest of the general public and not that of the private litigant" that matters. Brown v. FBI, 658 F.2d 71, 75 (2nd Cir. 1981). Casa de Maryland simply presents no interest of the general public that would be served by the disclosure of the employees' names.

Moreover, though Casa de Maryland states that "there is extensive record evidence of government impropriety," it presents no examples of such evidence. To the contrary, the declarations from the Administrative Inquiry Report prove, as the DHS investigating officials determined, that allegations of misconduct were "unsubstantiated," (Doc. 27, Exhibit 1, Attachment 13 at 1), and the purported "inconsistencies" or "potentially mutually-exclusive statements" in the material are based solely on speculative characterizations, conjecture, and the sort of "bare suspicion" that does not justify disclosure. Nat'l Archives and Records Admin. v. Favish, 541 U.S. 157, 174 (2004). Absent "strong evidence of official misconduct, the identities of law enforcement officials are protected . . .". Bullock v. FBI, 587 F.Supp.2d 250, 253 (D.D.C. 2008). Such evidence is lacking here.

4

6.      Casa de Maryland is also wrong to argue that the portions of the Administrative Inquiry Report reflecting attorney-client communications should be disclosed.  As explained in the United States' motion, the three brief sections of the Administrative Inquiry Report at issue document communications between DHS employees and attorneys from the DHS Office of General Counsel, and are accordingly exempt from disclosure under 5 U.S.C. § 552(b)(5).  It is not "impossible" to determine that these portions of the document reflect protected communications; the materials on their face explicitly reference communication with the "Office of Chief Counsel," and, in the words of the agency's Senior FOIA Paralegal Specialist, "consist of legal advice rendered to the ICE employee by the ICE attorney as well as the facts and circumstances pertaining to the subject of the advice." (Doc. 27, Exhibit 1, Law Declaration, at 6-7).   As the Law Declaration sets forth, the redacted portions include descriptions of how a DHS employee was "advised" by the attorney, provided "reasons," "guided," and "proposed."  (Id.).  These sorts of communications between a federal agency lawyer and an agency employee are covered by the attorney-client privilege and are consequently exempt from disclosure.  See Rein v. United States Patent and Trademark Office, 553 F.3d 353 at 376 (4th Cir. 2009).

Casa de Maryland incorrectly urges the Court to find that the "crime-fraud exception" somehow counsels towards disclosure of the attorney-client communications.  (Doc. 34 at 11-13).  The crime-fraud exception is limited to those situations where a client gives information to an attorney "for the purpose of committing or furthering a crime or fraud."  In re Grand Jury Proceedings, 401 F.3d 247, 251 (4th Cir. 2005).  The party asserting the crime-fraud exception bears the burden of making a *prima facie* showing that the privileged communications fall within the

exception, and must demonstrate that (1) the client was engaged in or planning a criminal or fraudulent scheme when he sought the advice of counsel to further the scheme, and (2) the documents containing the the privileged materials bear a close relationship to the client's existing or future scheme to commit a crime or fraud.  Id.; Chaudhry v. Gallerizzo, 174 F.3d 394, 403 (4th Cir. 1999).

Neither factor is remotely satisfied here because there is no evidence even hinting that any DHS employees were pursuing a criminal scheme and sought the advice of counsel to further that scheme; Casa de Maryland's suspicions to the contrary are exactly that – bare suspicions with no basis in the factual record.  The declaration that Casa de Maryland focuses on at worst indicates that the DHS employee made an accurate declaration, but that "certain elements of the event" were "highlighted" at the expense of others.  Such a statement does not establish a *prima facie* case that the individual was engaged in a "criminal or fraudulent scheme."  Though Casa de Maryland also complains that DHS employees did not testify at immigration hearings, there is no justifiable reason to make such a leap as to 'assume' that a crime was somehow being committed by their absence.

Finally, an *in camera* review to determine whether the crime-fraud exception applies would be unnecessary and inappropriate.  The Supreme Court counseled against such a review when it held that "[b]efore engaging in an *in camera* review to determine the applicability of the crime-fraud exception, the judge should require a showing of a factual basis adequate to support a good faith belief by a reasonable person that *in camera* review of the materials may reveal evidence to establish the claim that the crime-fraud exception applies."  United States v. Zolin, 491 U.S. 554, 572 (1989).

When, like here, there is no reasonable factual basis to support the allegation, an *in camera* review

is inappropriate and unnecessary, and the Court should

      For these reasons, and the reasons set forth in the Partial Motion to Dismiss or for Summary

Judgment, the United States respectfully requests that the Court grant the motion.


                 Respectfully submitted,

                 Rod J. Rosenstein
                 United States Attorney

By:        /s/               
                 Michael J. Friedman (Bar No. 28944)
                 Assistant United States Attorney
                 36 South Charles Street, Fourth Floor
                 Baltimore, Maryland 21201
                 (410) 209-4800

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on this 7th day of January, 2010, a copy of the foregoing Reply Brief

was served on counsel of record via the Court's electronic filing system.

_____/s/_____

Michael J. Friedman
Assistant United States Attorney
